HERMENEGILDO, k/a ENRIQUE ALICEA, Plaintiff and Appellant, *v.* HEIRS OF FRANCISCO GIL RIVERA, ETC., Defendants and Appellees.

No. 368. Decided March 19, 1963.

---

[12] *Teoría de la Aplicación e Investigación del Derecho* 241 (1947).

752

*Arístides Blanco Colón* for appellant.  *Víctor M. Pons* for appellees.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Plaintiff is a wage earner who used to work as a laborer for Francisco Gil, defendants' predecessor. He claims to be his son. He alleges that his mother lived in concubinage with Gil while both were single. Also, that he enjoyed the status since he was always treated as his son; that Gil bestowed affection upon him and helped him economically. He was 51 years of age at the time the action was brought. The evidence was conflicting: that of plaintiff, trying to establish the allegations; that of defendants, denying it. The conflict was resolved against plaintiff.

Appellant maintains that the trial court erred in not giving credit to his witnesses who were not contradicted. Plaintiff's theory is to the effect that his witnesses having testified that they used to see defendants' predecessor when he visited in the evening the house of plaintiff's mother, and defendants being unable to produce witnesses who would have been every day in the latter's company at all hours of the night and thus be able to testify that he did not visit the house, the judge was necessarily bound to give

credit to the witnesses who testified that they saw him, since their version is not physically impossible or improbable. His contention is the same with respect to the acts of acknowledgment. He invokes *Comm'r of Education* v. *Dist. Court; Feliciano, Int.*, 74 P.R.R. 306 (1953), where we said:

"... On several occasions we have repeatedly held that the uncontradicted testimony of a witness on a particular fact, should be believed unless his version be physically impossible or improbable or he should show himself untrustworthy by his contradictions or his manner of testifying."

It may be seen that the exposition of the rule contains the requirement: unless "he shows himself unworthy by his contradiction or his manner of testifying." And in *Biaggi* v. *Heirs of Esbrí*, 71 P.R.R. 420 (1950), we said that "the rule is to the effect that the courts cannot disbelieve a witness whose testimony has not been contradicted unless there exist reasonable grounds for not believing it."

We have read the evidence. We have examined the documentary evidence. The judge who heard and saw the witnesses testify was in fact in a better position to weigh their testimony. But even without seeing or hearing them, the trial judge's final determination not giving them credit seems the most sensible. The holding in *Biaggi* applies here: "In the present case, the trial court had reasons to doubt the veracity of the witnesses, and this being so, assuming that no evidence was introduced to contradict them, their own testimony discredited their evidence."

Let us point out portions from the testimonies given by plaintiff's witnesses which warrant the trial judge's determination not to give them credit.

We shall consider first the testimony of plaintiff's mother, Francisca Alicea. She asserts in her testimony that the person alleged to be the father was present when she gave birth to her child. There is documentary evidence

to the effect that at the time plaintiff was born the alleged father was outside of Puerto Rico. The defense attorney asked this witness if she had a son named Francisco, born in 1911. She denied it alleging that she did not have a son by that name. A birth certificate of the witness' son named Francisco Alicea, born in 1911, was offered. The witness asserted that the alleged father lived with her from 1904 until he married defendants' mother in 1910. Although he lived with her, it was not until 40 days later that he learned that she had recorded the child under the name of Hermenegildo and it was then that he suggested to her to name him Enrique.

Let us consider next Domingo Pérez' testimony. This witness testified that in 1940, when plaintiff was 33 years of age, in his presence the alleged father, when he saw plaintiff going to the town of Aibonito, called him and said to him, "Enrique, come here. Buy an outfit of clothing and a pair of shoes and don't go into town like that," and gave him $15 to buy an outfit of clothing and some shoes. That thereupon the witness asked him, "Don Paco, is he a laborer in your farm or what is he?," and that he answered, "No, that is my son; he is the son by my mistress." This witness is hardly credible if we bear in mind that that same witness has testified that he lived in Aibonito since 1922, that he was a neighbor of the farm of defendants' predecessor, and that he did not know Enrique Alicea during that time nor imagined that he was Don Paco's son. And after that incident of 1940, he did not see anything else which would indicate that plaintiff was Paco's son. When he was asked, "And since 1940 and thereafter, have you seen anything else regarding the relationship between him and Francisco Gil?", he answered, "I know nothing else."

Witness Rosendo Ortiz Ortiz testified that he is 83 years old; that he knew Paco Gil since the beginning of the century; that on a certain occasion when he was returning from hunt-

ing he saw Don Paco "carrying a small boy in his arms." He did not see him any more until 1936 when plaintiff was about 30 years old, as he passed by Don Paco's farm and engaged in this conversation: "Look, Rosendo, that's the little boy you saw the day you went hunting; he is already a man." "You mean this is that child?", asked the witness, and he answered, "Yes, that's my son."

Another witness, Ramón Rivera Rodríguez, testified that Don Paco used to send the daily allowance with him to plaintiff's mother. If, as alleged by the mother, he visited her every night, why did he have to send her the daily allowance with another person? And this witness refers to a time when Don Paco was not married, to the years 1907 and 1908.

Nicolás Mateo Vitalis is a co-worker. He testified that plaintiff used to ask Don Paco to bless him and that Don Paco referred to him as his son, and that on certain occasions he authorized him to take out charcoal without demanding participation, nor did he demand any of the witness.

Marcial Rivera Cotto repeated the statement of the blessing even in the presence of Don Paco's children by marriage. The latter contradicted him when they testified. He testified that Don Paco gave him orders for clothing for a merchant. The merchant was dead at the time of the trial.

María Alicea, plaintiff's aunt, mentioned the occasions in which Don Paco blessed plaintiff and other facts which tend to establish the allegations. However, if by the manner of testifying and of her conduct the judge is of the opinion that he should not give her credit in weighing the evidence as a whole, it is not arbitrary not to give credit to her version.

In his testimony plaintiff mentions the number of times Don Paco performed acts of acknowledgment toward him, helping him financially, letting others know that he was his father.

In considering the trial judge's determination not to give credit to plaintiff's evidence, who, as we have seen, was justified in doing so by the circumstances pointed out, we must also bear in mind that defendants introduced evidence to controvert that of plaintiff. Evidence was introduced to the effect that Gil was a cold person and that he was not used to making expressions of love, or to boasting in public of his relationship with his children. There is evidence in the sense that Gil's children knew plaintiff to be their father's laborer and that their father never acknowledged to them that he was his son. A sister of the deceased testified that at the time the latter allegedly lived with plaintiff's mother, he slept every night in her house. This testimony is corroborated by witness Cristóbal Moscoso, a pharmacist who knew Gil intimately, who testified that before the latter married in 1910 he lived in his own house with his mother and brothers and sisters. This witness said that he knew of a child which Gil had before he was married, but that he never heard that plaintiff was his son. If he was or if it had been commented, he would have heard it. The evidence that Gil lived with his mother and brothers and sisters at the time it is alleged he lived with plaintiff's mother is fully corroborated by the witness who knew him intimately.

From an unbiased reading of the entire evidence it is reasonable to conclude that the trial judge was justified in not giving credit to plaintiff's evidence.

The judgment appealed from will be affirmed.